CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
SEP 1 3 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID MICHAEL JORDAN, ) | |
|     Petitioner, ) | Civil Action No. 7:06cv00381 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. Norman K. Moon |
|     Respondent. ) | United States District Judge |

Petitioner, David Michael Jordan, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The action is currently before the court on the respondent's motion to dismiss. For the reasons that follow, the court will grant the respondent's motion.

## Background

On May 29, 2002, state and local law enforcement officers conducted surveillance flights in Patrick County as part of a marijuana eradication program. (Joint Appendix ("J.A.") at 108.) During the course of the flights, officers observed marijuana plants growing in buckets in the back of a dump truck on Clarkhouse Farm Road. (J.A. at 108-09.) The truck was located on property owned by Cecil Corns. (J.A. at 109.) Officers subsequently traveled to the property, where they located the dump truck and discovered 968 marijuana plants growing in and near the truck bed. (J.A. at 109-12.)

On May 30, 2002, officers interviewed Cecil Corns' son, Barry Corns ("Barry"), who admitted that he was involved in the marijuana growing operation. (J.A. at 113.) Barry also told the officers that he had "other friends" who were involved with him. (J.A. at 114.) Barry was not arrested at that time, because he agreed to assist the officers in their investigation of the petitioner, David Michael Jordan ("Michael") and his brother Marion Wayne Jordan ("Wayne"). (J.A. at 114.) Neither Michael nor his brother were aware of Barry's agreement to cooperate in the investigation.

(J.A. at 114.)

That same day, officers outfitted Barry with a transmitting device and followed him to Michael's residence in Stokes County, North Carolina. (J.A. at 114-16.) Barry met Michael outside the residence and they engaged in a conversation that was monitored and recorded by Investigator Roger Wilson ("Investigator Wilson") of the Patrick County Sheriff's Department. (J.A. at 114-17.) During the conversation, Michael and Barry discussed the seizure of the marijuana. Barry told Michael that he had saved approximately twenty marijuana plants that the officers had overlooked. (J.A. at 207, 210.) Michael agreed to meet Barry the following day to assist him in planting the remaining plants, and advised Barry that he would talk to Wayne. (J.A. at 210-11, 225.) Michael also repeatedly acknowledged his involvement with the marijuana plants, and agreed that he and his brother would help Barry hire an attorney. (J.A. at 207-08, 210-15, 217-18, 221, 225.)

On June 24, 2002, Investigator Wilson set up a video and audio recording device inside Barry's residence and subsequently recorded a conversation between Barry and Wayne. (J.A. at 119-20.) During their conversation, Wayne stated that "most of" the plants he had were "in that dump truck." (J.A. at 231.) He also stated that he had previously told Michael that "this dump truck has got to get out of here . . . ." (J.A. at 233.) Further, he expressed regret about Barry's mother being affected by the events that had transpired. (J.A. at 230.) Wayne also agreed that he and Barry would plant the remaining marijuana plants the following day. (J.A. at 238-39.)

On June 25, 2002, officers conducted surveillance at a prearranged location in Patrick County. (J.A. at 187.) The officers laid out approximately fourteen of the plants that had been confiscated on May 29, 2002, in an area where Barry would find them. (J.A. at 187-89.) Barry and Wayne arrived at the location around 7:00 p.m. (J.A. 191.) Investigator Gary Brown observed Wayne planting the marijuana plants, which took about an hour. (J.A. at 189.)

2

On August 22, 2002, Wayne and Michael were charged in a three-count indictment returned by a federal grand jury in the Western District of Virginia. Count One charged the defendants with conspiring to possess with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 846. Count Two charged the defendants with possessing 100 or more marijuana plants with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 841. Count Three charged the defendants with possessing 100 or less marijuana plants with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 841.

On January 26, 2003, Barry died in an unrelated farming accident. The government subsequently filed a motion to admit the audio tape recording of the conversation between Michael and Barry and the video tape recording of the conversation between Wayne and Barry. On April 22, 2003, the government moved to dismiss Count Three of the indictment, due to Barry's unavailability to testify at trial. The court also held a hearing on the government's motion in limine, and determined that both tapes would be admissible at trial.

Following a jury trial, Wayne and Michael were convicted of Counts One and Two of the indictment. On July 14, 2003, Michael was sentenced to a total term of imprisonment of 120 months, followed by an eight-year period of supervised release. The judgment and conviction order was entered on August 15, 2003. That same day, the court issued an opinion in which it concluded that the video and audio tapes were properly admitted into evidence at trial. The court found that the tapes were admissible both as co-conspirator statements made in furtherance of a conspiracy under Rule 801(d)(2)(E) of the Federal Rules of Evidence, and also as statements against penal interest under Rule 804(b)(3).

Wayne and Michael subsequently filed a joint appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, the Jordans challenged the court's ruling as to the admissibility

3

of the audio and video tapes. The Jordans also argued that the tapes were inadmissible hearsay and that their admission violated their right to confront adverse witnesses. On April 13, 2005, the Fourth Circuit found that this court did not commit reversible error by admitting the tapes and affirmed the Jordans' convictions for the reasons stated by this court.

Michael filed the instant § 2255 motion on June 23, 2006. Michael argues that trial counsel was ineffective on several grounds, including:

1. Failing to object to Michael being denied his right to confront his accuser in several instances;

2. Failing to object to hearsay testimony by Instigator Wilson being admitted;

3. Failing to object to whether the conspiracy continued after Barry agreed to cooperate with the police;

4. Failing to object to Investigator Wilson identifying Michael's voice on the audiotape;

5. Failing to object to Investigator Wilson performing dual roles for the prosecution, as case agent and expert witness;

6. Failing to object to the prosecution and Investigator Wilson improperly vouching for the credibility of Barry Corns;

7. Failing to object to "irrelevant conversation" being admitted in the video-taped conversation;

8. Failing to obtain an expert witness to challenge the contents of the audio tape admitted into evidence;

9. Failing to object to Michael being convicted under § 841 for possession of 100 or more marijuana plants when they were actually seedling or cuttings; and

10. Failing to object to the Pre-Sentence Investigation Report's ("PSR") calculation of his offense level.

On July 24, 2006, the United States filed a motion to dismiss, arguing that Michael's claim that counsel failed to object to the admission of the tapes into evidence is wholly unsupported by the record and, further, that any negligence on the part of counsel did not result in prejudice to Michael

4

because his own statements on the audio tape were admissible as statements against interest. Therefore, the United States argues, Michael failed to meet the two-prong test under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In response to the motion to dismiss, Michael filed a response in opposition. In a portion of his response, Michael requests that a decision as to the current petition be held in abeyance until several Supreme Court cases allegedly bearing on the present issues are decided.

## Discussion

Michael's ineffective assistance claims are governed by the United States Supreme Court's decision in <u>Strickland</u>, wherein the Court set forth a two-prong test for evaluating ineffective assistance claims. <u>Strickland</u>, 466 U.S. at 669. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that the "deficient performance" must have "prejudiced the defense." <u>Id.</u> at 687-88. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

A.  **<u>Confrontation Clause and Hearsay Claims</u>**

Michael raises several ineffective assistance claims, many of which ultimately allege that counsel was ineffective in failing to challenge the admission of the video and audio tapes, which "denied [Michael] the opportunity to confront and cross-examine his accuser, Barry Corns" and violated the hearsay rule.

On direct appeal, counsel argued that this court erred in admitting into evidence the audio and video tapes. Counsel argued that the tapes were inadmissible hearsay and that, by admitting them, Michael was denied his right to confront the witnesses against him. The United States Court of Appeals for the Fourth Circuit found no reversible error in the admission of the tapes and affirmed

5

the convictions. United States v. Jordan, 127 Fed. Appx. 646 (4th Cir. 2005). The Fourth Circuit agreed that the tapes were admissible both as co-conspirator statements made in furtherance of a conspiracy, and also as statements against penal interests. Fed. R. Evid. 801(d)(2)(E) and 804(b)(3). The court also found that even if the tapes had been erroneously admitted into evidence, any error was harmless, given that Michael's statements in which he admitted his involvement with the marijuana plants, as corroborated by exhibits and testimony by police witnesses, clearly proved his guilt beyond a reasonable doubt.

A well-worn tenet of § 2255 proceedings is that a petitioner may not "recast, under the guise of collateral attack, questions fully considered" by the Court of Appeals. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, where a claim has already been determined by the United States Court of Appeals for the Fourth Circuit, the court cannot revisit it here. See generally Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt, 537 F.2d at 1183. Therefore, the court need not address the merits of the admissibility of the tapes as this claim has already been addressed by the Fourth Circuit. Furthermore, Michael's claims of ineffective assistance relating to objections based on hearsay evidence and the confrontation clause necessarily fail as the record reflects that counsel objected to the admission of the tapes prior to trial, at trial, and on appeal.

### B. Continuation of the Conspiracy Claim

Michael further argues that counsel was ineffective in failing to object to the issue of whether the conspiracy continued after Barry agreed to cooperate with the police. It is uncontradicted that a conspiracy existed between Barry, Wayne, and Michael prior to the seizure of the marijuana plants by the police on May 29, 2002. Furthermore, "[w]here police have frustrated a conspiracy's specific objective, but conspirators, unaware of that fact, have neither abandoned the conspiracy nor

6

withdrawn, these special conspiracy related dangers remain as does the conspiracy's essence–the agreement to commit the crime." United States v. Recio, 537 U.S. 270, 270-71 (2003). Thus, even though Barry agreed to cooperate with the police and the conspiracy's object to manufacture and distribute marijuana was defeated, the conspiracy to commit the crime continued. Michael and Barry had a conversation concerning Michael's role in the conspiracy, his intent to continue the conspiracy by planting the marijuana plants that were not confiscated, and his intent to continue to involve his brother, Wayne. Accordingly, the court finds that the conspiracy continued after Barry's agreement with the police and counsel was not ineffective for failing to object to a legally frivolous claim. See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987) (finding that counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis").

### C. Remaining Claims

The United States failed to address all of Michael's remaining claims, however, the court finds that they nevertheless have no merit.

#### 1. Dual Roles of Wilson

Michael contends that counsel should have objected because Investigator Wilson performed "dual roles" for the prosecution, "as case agent and expert witness." This essentially argues that a law enforcement officer active in a criminal case is limited at trial to testifying as a lay witness. In effect, Michael claims that Federal Rule of Evidence 702 (which states that *any witness* [italics added] may be "qualified as an expert by knowledge, skill, experience, training, or education," and "may testify thereto in the form of an opinion") somehow excludes police officers. The lack of merit to this argument is evidenced both by a plain reading of the rule and by innumerable cases in which police officers properly testified in an expert capacity. See United States v. Encarnacion, 1991 U.S. App. LEXIS 2674, 6-7 (4th Cir. 1991) ("appellants attack the qualifications of the police officers to

7

testify as expert witnesses on the subject of cocaine trafficking . . . . We find no abuse of discretion in qualifying the officers as experts."). "Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." United States v. Thomas, 74 F.3d 676, 682 (6th Cir. 1996); see also United States v. Nichols, 184 Fed. Appx. 532, 537 (6th Cir. 2006) ("Generally, police officers with the requisite qualifications are permitted to testify as both fact witnesses and expert witnesses." (quoting United States v. Harris, 192 F.3d 580, 589 (6th Cir. 1999))); United States v. Humphreys, 468 F.3d 1051, 1052 (7th Cir. 2006) (ATF special agent qualified as expert because "he was trained in firearms identification and had identified between 1,500 and 2,000 firearms in his 25 years as a law enforcement.").

### 2. Improper Vouching

Michael claims that counsel was ineffective in failing to object to the prosecution and Investigator Wilson improperly vouching for the credibility of Barry Corns. A prosecutor may neither vouch for nor bolster the testimony of a government witness in arguments to the jury. United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness." Sanchez, 118 F.3d at 198. It cannot be vouching when no statement is made about one's personal belief in the truth of the statement. In this case, Michael has identified no specific remarks or conduct by either the United States or its witness, Investigator Wilson, as support for his claim, and the court's review of the record discloses no impropriety. Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton, 826 F.2d at 1359. Since there was no obvious basis for counsel to object in this case, the court cannot find that counsel was ineffective.

8

Therefore, the court dismisses this claim.[1]

### 3. Allegedly Irrelevant Conversation in the Videotape

Michael claims that counsel was ineffective in failing to move to have "irrelevant" portions removed from the "taped conversation[s]." However, Michael points to no authority indicating that the "irrelevant" portions were inadmissible as against him. Nor does he clarify or provide any further information concerning the claimed "irrelevant" conversations. Moreover, the Fourth Circuit has already found that both the audio and video tapes were properly admitted. Accordingly, the court finds that Wayne has failed to show that counsel was ineffective or that the admission of the "irrelevant" portions of the conversation prejudiced the outcome of his case.

### 4. Wilson's Identification of Michael on the Audio Tape

Michael also claims that counsel was ineffective in failing to object to Investigator Wilson identifying his voice on the audio recording because Investigator Wilson was not an expert witness. This claim, in effect, challenges the admission of the audio tape by arguing Investigator Wilson's identification was inadmissible to authenticate it. While it is true that the prosecution had not qualified Investigator Wilson as an expert in voice-identification, in many situations, a witness need not be qualified as an expert to testify in the form of an opinion. One such situation is the identification of another's voice. Generally, a lay witness may give an opinion if it is rationally based on his personal observations, it is helpful to a clear understanding of his testimony, and it is not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701(b); see also

---

[1] To the extent that Michael's claim can be construed as one of prosecutorial misconduct, it also fails. A claim of prosecutorial misconduct is reviewed to determine whether the conduct complained of so infected the trial with unfairness as to make the resulting conviction a denial of due process. United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002). To prevail under this standard, Michael must show that "the prosecutor's remarks or conduct were improper and, . . . that such remarks or conduct prejudicially affected his substantial rights" so as to deprive him of a fair trial. Id. Since Michael does not identify any specific remarks or conduct by the Assistant United States Attorney that were allegedly improper, the court cannot find that the prosecutor acted improperly.

9

United States v. Zepeda-Lopez, 478 F. 3d 1213 (10th Cir. 2007). Lay witnesses are frequently used at trial to identify voices – whether heard in person or on a recording – based on familiarity gained before or after the occasion in issue. See, e.g., United States v. Bice-Bey, 701 F.2d 1086, 1090 (4th Cir. 1983) (FBI agents properly identified voice in recorded telephone conversation as that of defendant when agents acquired their familiarity with defendant's voice through conversations that occurred after recorded telephone conversation); 901 Weinstein's Federal Evidence § 901.06 ("This familiarity [with identified speaker's voice] can be acquired at any time, either before or after the occasion that is at issue in the litigation.").

Moreover, when authenticating a recording pursuant to Federal Rule of Evidence 901(b)(5), the witness need only have limited familiarity with the identified speaker's voice. United States v. Lampton, 158 F.3d 251, 259 (5th Cir. 1998) (where one personal contact with speaker was sufficient to meet the requirements of Rule 901(b)(5) when agent identified speaker's voice in recorded telephone conversations); United States v. Vega, 860 F.2d 779, 788 (7th Cir. 1988) (minimal familiarity with person's voice is sufficient to sustain admissibility of voice identification evidence); see also United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987). In this case, Investigator Wilson gained familiarity with Michael's voice when he monitored the live audio recording of the May 30, 2002 encounter. Therefore, because his identification was admissible to authenticate the audiotape, counsel would have no reasonable objection and was not ineffective in failing to object.

### 5. Defense Expert to Challenge Contents of Audio Tape

Michael claims that counsel was ineffective in failing to obtain an expert to challenge the contents of the audio tape. Conclusory allegations are insufficient to establish the requisite prejudice under Strickland. United States v. Terry, 366 F.3d 312 (4th Cir. 2004). In his petition and all of his responses, Michael does not identify what "contents" the expert could have challenged, what the

10

expert could have testified to, or how the expert's testimony would have affected the outcome of his case. Accordingly, the court finds that Michael has not demonstrated either prong of Strickland and, therefore, his claim fails.

### 6. Marijuana Seedlings and Cuttings

Michael also claims that counsel was ineffective in failing to object to Michael's conviction under 21 U.S.C. § 841 for 100 or more marijuana plants when actually they were only marijuana seedlings and cuttings. However, the record does not support Michael's claim. A marijuana plant is "an organism having leaves and a readily observable root formation." U.S.S.G. § 2D1.1 cmt. n.17. Other circuits have held that, "cuttings and seedlings are not 'marihuana plants' within the meaning of 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1(c) unless there is 'some readily observable evidence of root formation.'" United States v. Foree, 43 F.3d 1572, 1581 (11th Cir. 1995) (quoting United States v. Edge, 989 F.2d 871, 877 (6th Cir. 1993)); see also United States v. Bechtol, 939 F.2d 603, 604 (8th Cir. 1991) (a cutting with "root hairs," viz., "fine projections coming from the stem," is a "plant" for purposes of the sentencing guidelines). In this case, Investigator Wilson testified that he found a "bed of marijuana plants growing." (J.A. at 109.) He further states that he personally looked at the 968 individual marijuana plants and, based on his training and experience, determined that they were all plants. (J.A. at 111.) Accordingly, the court finds that no reasonable objection existed regarding seedling or cuttings. Again, counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis," and therefore Michael's claim fails. See Clanton, 826 F.2d at 1359.

### 7. PSR's Calculation of Offense Level

Finally, Michael alleges that counsel was ineffective in failing to object to the PSR's calulation of his offense level. However, Michael does not indicate what errors existed in his

11

report, what counsel should have objected to, or how any objection would have changed the outcome of the case. Therefore, the court finds that his conclusory allegations are insufficient to establish the requisite prejudice under Strickland. Terry, 366 F.3d at 312.

### Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to the petitioner.

ENTER: This 13th day of September, 2007.

/s/ James C. Moon
United States District Judge

12

Case 7:06-cv-00381-NKM-mfu    Document 7    Filed 09/13/07    Page 12 of 12    Pageid#: 68